## Sawyer *vs.* Shaw & al.

*A.* and *B.* made a contract for the sale of a chaise, by which it was agreed that *B.* should give his notes for the price, payable in twelve months, and in the mean time should keep possession of the chaise, and use it at his pleasure; but that the property should remain in *A.* till the notes were paid. *B.* accordingly gave his notes and received the chaise; which he used as his own, and afterwards sold, before the year expired, to *C.* who had in fact no knowledge of the terms of the contract. After the expiration of the year, and after *C.* had used the chaise some months, with the knowledge of *A.* and had subsequently sold it, *A.* brought an action of trover against him for the chaise; and it was held that the action might well be maintained; there being on the part of *A.* no fraudulent delay or acquiescence.

THIS action, which was trover for a chaise, was tried before the

Chief Justice, who reported the following facts. The plaintiff, being the original owner of the chaise, entered into a contract *July* 22, 1829, with one *Hanscom*, for the sale of it to him for one hundred and sixty-eight dollars, for which *Hanscom* gave him two promissory notes, each for a moiety of the price, one payable in six and the other in twelve months ; it being agreed in writing between them that *Hanscom* should take possession of the chaise and use it as his own, the property still remaining in the plaintiff till both the notes were paid ; and that if the plaintiff should take it back for nonpayment, *Hanscom* should pay for the use of it, and the plaintiff should refund any part of the price he might have received. *Hanscom* accordingly gave a receipt for the chaise, stating the agreement, and used the chaise as his own ; saying, to one witness, that he " had a year to try it in." On the 6th of *November* following, he sold it to the defendants, who publicly used it for a short time in *Bangor*, where the plaintiff and defendants lived. In *December* of the same year, one of the defendants went to the westward with the chaise ; and in the spring following sold it. The defendants had no notice of any claim of the plaintiff upon the chaise, prior to their purchase, nor while they kept it ; nor until the middle of *December*, 1830, when the plaintiff demanded it of them. *Hanscom* left *Bangor* in *January*, 1830, and was absent a short time from the State ; but returned in the summer following, soon after which he became insolvent.

Upon this evidence the Chief Justice instructed the jury that the action was maintained, and directed a verdict for the plaintiff for the value of the property. To which opinion the defendants filed exceptions.

*Gilman* and *Allen*, in support of the exceptions, contended, first, that the possession, both in law and in fact was in *Hanscom*, whose sale to the defendants was valid, and was sanctioned by the long acquiescence of the plaintiff ; *Hussey v. Thornton*, 4 *Mass.* 405 ; *Buffinton v. Gerrish*, 15 *Mass.* 158.—Second, that the plaintiff, by delay, not having made demand till after *Hanscom* failed, nor till several months after the last note had become payable, had waived

his lien on the chaise, and consented to resort to the notes alone; all which should have been left to the jury. Having stood by and seen the property sold to another, he ought not to be permitted to set up his own title against such sale. *Wyman v. Dorr,* 3 *Greenl.* 183; *Ward v. McAulay* 4 *D. & E.* 498; *Gordon v. Harper,* 7 *D. & E.* 9; *Smith v. Plummer,* 15 *East.* 607; *Ayer v. Bartlett,* 6 *Pick.* 71; 9 *Pick.* 156.

*Kent* and *Rogers,* for the plaintiff, cited *Edwards v. Harden,* 2 *D. & E.* 596; *Holbrook v. Baker,* 5 *Greenl.* 311. *Patten v. Clarke,* 5 *Pick.* 5.

MELLEN C. J. delivered the opinion of the Court at the ensuing *July* term in *Waldo.*

*Sawyer* was once the undisputed owner of the chaise in question, and unless he has parted with his right to reclaim it, he is entitled to judgment on the verdict. The receipt given by *Hanscom,* in plain terms negatives the idea of an absolute sale, and it would seem, of any sale at the time the receipt and promissory notes were signed. But, at any rate, the property was not to vest in *Hanscom* until both notes were paid. *Sawyer* had a right at any time, after the first note should become due, if not then paid, to take back the chaise; and the parties seem to agree that he had no such right before that time. If taken back, *Hanscom* was to pay the plaintiff a reasonable sum for the use of it. Neither of the notes has been paid. When, then, could the property have passed? According to the terms of the contract it never did pass to *Hanscom;* and he, having no property in the chaise, could not convey any to the defendants, according to well settled principles. *Staples v. Bradbury,* 8 *Green.* 181.

But it is contended that as the defendants are *bona fide* purchasers, without notice, they are not answerable to the plaintiff, because he has by his conduct led them into their present situation, and waived all claim to the property; or, at least, that the question of waiver, or implied fraud should have been left to the jury. This objection renders it necessary for us to be particular as to dates and

7

to some other facts. The contract, respecting the property was made between the plaintiff and *Hanscom, July* 22, 1829. At that time, and for a year afterwards, *Hanscom* was solvent, and, for any thing appearing to the contrary, of unsuspected responsibility. The case finds that in the summer of 1830, he became insolvent. *Hanscom* stated that he had a year, in which to try the chaise. In this transaction, can the plaintiff be considered as acting, in any manner fraudulently? Did he thereby enable *Hanscom* to hold out a false character and credit? Such might, perhaps, have been the construction, had *Hanscom* then been in insolvent circumstances, and the plaintiff been privy to the fact. Again; it appears that on the 6th of *November*, 1829, long before the plaintiff could have had a right to reclaim and take back the chaise, *Hanscom* undertook to make the sale to the defendants. Surely the plaintiff had no right to interfere with the property till *Hanscom* had violated his contract by non payment of the first note; at least, no fraudulent intent could legally be imputed to him for omitting to exercise such a right, if he had it, in consequence of the sale made by *Hanscom*. What delay was there after the sale, or evidence of waiver? The case finds that in *December*, one of the defendants went, with the chaise, to the westward; but it appears that this was before the first note became due, and a right to reclaim the property accrued. After the defendants bought the chaise, it was publicly used by them in *Bangor*, for a short time; which was before one of the defendants went to the westward with it, where he sold it in the following spring, and it was never brought back again to *Bangor*. In all these facts is there any proof of fraudulent intent or delay on the part of the plaintiff? The exception does not show any thing more than that *Hanscom*, a man in good circumstances, having in his possession, on trial, the plaintiff's chaise, for which he may be considered as having made a conditional bargain, sold it to the defendants and they openly used it in *Bangor*, a short time afterwards; all which events took place before the plaintiff, by the terms of his contract, had any right to reclaim the chaise. It does not appear that the chaise was ever used a moment in *Bangor*, after *December*.

No false credit was given to *Hanscom;* he needed none; he had true credit, and needed no other. On these facts, if the question of imputed fraud, or waiver of claim on the part of the plaintiff, had been submitted to the jury, they would not have justified a verdict in favor of the defendant. Fraud is never to be presumed. It might, perhaps, in all such cases, be best to submit all such circumstances to the jury, to prevent any possible objection. It is stated that on the foregoing evidence the Judge directed the jury to find for the plaintiff; but at the argument, he stated that the evidence was all before them and submitted to their consideration in the usual manner. The delay to commence the action or demand the property for more than a year after the sale to the defendants, operated as a deception on no one, and can have no effect on the decision of the cause. Upon the whole, we see no propriety or use in disturbing the verdict; because, on the facts before us, we perceive nothing which was sufficient to entitle the defendant to a verdict. There must be                           *Judgment for plaintiff.*